Richard S. Busch (SBN 319881)
*richard.busch@arlaw.com*
Mark L. Block (SBN 115457)
*mark.block@arlaw.com*
Andrew H. "Drew" Davis (*pro hac vice* forthcoming)
*drew.davis@arlaw.com*
David Niemierzycki (*pro hac vice* forthcoming)
*david.niemierzycki@arlaw.com*
ADAMS & REESE, LLP
1600 West End Blvd., Suite 1400
Nashville, TN 37203
Tel: (615) 259-1450
Fax: (615) 259-1470

Jeffrey E. Faucette (SBN 193066)
*jeff@skaggsfaucette.com*
Martin R. Glick (SBN 40187)
*marty@skaggsfaucette.com*
SKAGGS FAUCETTE LLP
505 Montgomery Street, 11th Floor
San Francisco CA 94111
Tel: (415) 874-3181
Fax: (888) 980- 6547

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROUND HILL MUSIC LP; ROUND HILL MUSIC ROYALTY FUND II, LP; ROUND HILL MUSIC ROYALTY FUND III, LP; ROUND HILL MUSIC ROYALTY FUND III PLUS, LP; GFP CO-INVEST, LP; and RH CARLIN HOLDINGS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case Number: 5:26-cv-08505<br><br>**COMPLAINT FOR DIRECT COPYRIGHT INFRINGEMENT, CIRCUMVENTION OF PROTECTION MEASURES, AND REMOVAL OR ALTERATION OF CMI**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Round Hill Music LP, Round Hill Music Royalty Fund II, LP, Round Hill Music Royalty Fund III, LP, Round Hill Music Royalty Fund III Plus, LP, GFP Co-Invest, LP, and RH Carlin Holdings LLC (collectively "Round Hill") for their complaint against Defendant Anthropic PBC ("Anthropic" or "Defendant") allege, on personal knowledge as to matters relating to itself, and on information and belief as to all other matters, as follows:

## I. NATURE OF THE CASE

1. Round Hill is an independent music publisher and record production company which owns or controls, in whole and in part, the exclusive rights to 14,364 valuable musical compositions and 16,873 sound recordings pursuant to its contracts with songwriters, artists, and other rights holders. It brings this action to enforce these rights against the Defendant who has built its entire business model based on copyright infringement at a scale heretofore unseen. Plaintiff Round Hill Music LP is the manager/administrator of the copyrights owned by the Plaintiff funds pursuant to written agreement.

2. Round Hill's catalog includes famous, evergreen hits across every genre with billions of streams between them including, *inter alia*, "Iris" and "Slide" performed by the Goo Goo Dolls; "Total Eclipse of the Heart" performed by Bonnie Tyler, "I Got You (I Feel Good)" performed by James Brown; "Got My Mind Set On You" as made famous by James Ray and George Harrison; "Bat Out of Hell" performed by Meatloaf; "My Own Worst Enemy" as performed by Lit; "Rudy A Message To You" as made famous by the Specials; "Good Lovin'" as performed by the Rascals; "Holy Diver" as performed by Dio; "The Revolution Will Not Be Televised" as performed by Gil Scott; "Lola" as performed by the Kinks; "Sweet Little Sister" as performed by Skid Row; and many more household names and titles. A non-exhaustive, exemplary list of 500 copyrighted musical compositions in which Round Hill owns 100 percent or, as an exclusive licensee, controls the U.S. copyrights, and that Defendant has infringed is attached hereto as **Exhibit A** (hereinafter the "Works") which is provided to serve as a prioritized representative bellwether, as has been done in other similar copyright infringement cases in this Court. The Works contains some of the most iconic lyrics and melodies in music history.

3. Anthropic has admitted in public statements and in other litigations to widespread

copying of copyrighted materials for use in the training of their "artificial intelligence" ("AI") models. It has done so in a manner that completely disregards the rights of Round Hill by making unlicensed copies of its Works, removing Copyright Management Information ("CMI"), and training the AI models themselves to ***disregard*** the CMI in both its training and output to conceal the infringement.

4. Indeed, as discussed in detail below, when asked to recreate specific songs "for a modern audience," Claude did so and admitted:

> **"These renders keep landing very close to the originals: same structure, same hooks reused with light rewording, and full sets of verses/choruses/bridges. That's edging past 'inspired by' into reproducing the copyrighted song, even when the words are swapped out."**

5. Defendant Anthropic is a for-profit corporation whose entire business models rely on creating viable, user-friendly AI applications. To create such a product, the AI models must pass the Turing Test – or at least provide responses that seem natively human. However convincing the output might be, though, AI models are just strings of code—1s and 0s—and essentially are only capable of pattern recognition and probability calculations: "monkey see; monkey do". The Models, thus, inherently rely on training to inform these probability calculations and pattern recognition, and Defendant Anthropic elected to train its models on copyrighted materials—including that belonging to Round Hill—without license or payment.

6. That is, put another way, Defendant Anthropic has essentially put to test the adage of whether monkeys and typewriters could, provided enough time, recreate *Hamlet*. However, rather than wait out the "infinite" amount of time that theorem posits is necessary for said monkeys with typewriters to randomly, one letter at a time, string together that famous question of "To be or not to be?",[1] Anthropic found a work around. Rather than training its monkeys (the AI Models) from first principles, Anthropic found mimicry (*i.e.* copyright infringement) to be the much easier pursuit.

7. Anthropic, through its AI models known as "Claude," the last version of which was

[1] Shakespeare, William, *Hamlet*, Act III, Scene 1.

just released a few months ago, has unlawfully copied and prepared derivative works based upon the copyrighted lyrics which belong to Round Hill without *any* license from or payment to Round Hill for the use of their copyrighted materials. Round Hill's claims against Anthropic should not come as news to it, given Round Hill is now one of many copyright holders whose rights have been violated, leading to several lawsuits across the country, at least three of which related to musical compositions are pending in this District.

8. Anthropic's infringement of Round Hill's copyrighted musical compositions occurs throughout the entire development of its Claude models and continues through the output generated by the models for Anthropic's users. Upon information and belief, the continuous reproduction on Anthropic servers and otherwise, and hence infringement, continues to this day. To develop or "train" its Claude models, Anthropic copied an enormous volume of text from sources on the Internet through several means, including using automated scraping tools to copy text without authorization from public websites. Anthropic assembled these pirated and scraped works—including Round Hill's copyrighted lyrics and musical compositions—into a permanent, general-purpose central library intended to be retained indefinitely, from which subsets were selected and copied again to train the next generation of Claude models. Based on the pirated, copyrighted works that are indelibly part of Claude's operational model, it can respond to user queries—and given the nature of the user's question, recycle these copyrighted works in its responses.

9. While Anthropic styles itself as a "public benefit corporation," the foundation of its tech and business model are these unlicensed copies, as well as server copies, of copyrighted material. Anthropic has built its entire business model on copyright infringement at a scale heretofore unknown. Enjoying the fruits of others' labor without any payment thereto, Anthropic reported raising $30 billion in new funding in February 2026, with a resulting $380 billion valuation of the company. That valuation has only grown with the latest reports showing that Anthropic's value had more than tripled in just five months thereafter to $1.2 ***trillion*** as of July 2026.[2] For context, if

[2] Bergman, Ben. "Anthropic Has Soared to a $1.2 Trillion Valuation on Secondary Markets," Business Insider, <www.businessinsider.com/ anthropic-soared-1-2-trillion-valuation-on-secondary-markets-2026-7> (last visited July 30, 2026).

Anthropic's valuation represented the GDP of a country, it would rank at number 20 in the world between Saudi Arabia and Switzerland.[3] The only product it makes, and the only services it provides are based ***entirely*** on its AI models—models that were created and trained from unlicensed copies of copyrighted works, and which generate further infringing copies of copyrighted works, including Round Hill's Works.

## II. THE PARTIES

10. Plaintiff Round Hill Music LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203. Round Hill Music, LP is the manager pursuant to written contract of the other Plaintiffs' funds and catalogs. Round Hill Music, LP has the exclusive right to license the Works and to initiate litigation on their behalf.

11. Round Hill Music Royalty Fund II, LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

12. Round Hill Music Royalty Fund III, LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

13. Round Hill Music Royalty Fund III Plus, LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

14. GFP Co-Invest, LP is a Delaware Limited Partnership with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

15. RH Carlin Holdings LLC is a Delaware Limited Liability Company with its principal place of business at 818 18th Avenue S., Ste. 940, Nashville, Tennessee 37203.

16. Each Work listed in Exhibit A constitutes an original work or copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101, *et seq.*, and has been registered with the U.S. Copyright Office as evidenced by the registration numbers listed therein. The copyrights for each of the Works in Exhibit A remain valid and subsisting, and have been owned and/or controlled by Round Hill at all times relevant to the allegations in this Complaint.

17. Defendant Anthropic PBC is a Delaware public benefit corporation with its principal

---

[3] Worldometer, GDP by Country <www.worldometers.info/gdp/gdp-by-country/> (last visited July 30, 2026).

place of business in San Francisco, California. Anthropic develops, operates, sells, and licenses AI programs, including the Claude family of large language models ("LLMs").[4]

18. Anthropic was founded in or around 2021, when a group of OpenAI employees left to start a competing AI company. Anthropic's founders claimed to be starting a different kind of company, one with AI safety and research at the forefront that would mitigate AI's risks. But in its pursuit of those goals, Anthropic ran roughshod over the rights of countless creatives and rightsholders, using their works without permission, removing identifying information from those works, and keeping ill-gotten gains for itself. Among the works stolen by Anthropic in its rush to create a new AI behemoth are those owned or controlled by Round Hill—works created by songwriters who are household names as well as those living check to check, all of whom Round Hill takes great pride in representing.

## III. JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims alleged herein arise under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, including the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201-1205.

20. This Court has personal jurisdiction over Defendant Anthropic because it is headquartered in this State and does systematic and continuous business in the State; because the claims herein relate to or arise out of infringing activities that Anthropic purposefully directed toward or conducted in the State; and because the exercise of personal jurisdiction over Anthropic is just and reasonable.

21. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and/or 1400 because Defendant Anthropic resides in and may be found in this District; because Anthropic conducts, transacts, and solicits business in this District; and because a substantial part of the events or omissions giving rise to the claims occurred in this District. Additionally, related actions against Anthropic for copyright infringement are currently pending in this District, including *Concord Music Group, Inc., et al. v. Anthropic PBC*, No. 5:24-cv-03811-EKL (N.D. Cal.), *Concord Music Group,*

[4] An LLM, or "Large Language Model," is a type of artificial intelligence program trained on massive amounts of text to recognize, translate, summarize, and generate human-like language.

*Inc., et al. v. Anthropic PBC*, No. 5:26-cv-00880-EKL (N.D. Cal.), and *BMG Rights Management (US) LLC, et al. v. Anthropic PBC*, No. 5:26-cv-02334 (N.D. Cal.).

## IV. DIVISIONAL ASSIGNMENT

22. Pursuant to the Court's Assignment Plan (General Order No. 44), this action is an intellectual property action within the meaning of Local Rule 3-2(c) and therefore is not subject to intradistrict venue provisions.

## V. FACTUAL BACKGROUND

### A. Round Hill and Its Copyrights

23. Round Hill Music is a leading independent music company that, through its affiliated catalog entities, owns or exclusively controls copyrights in tens of thousands of musical compositions and master recordings spanning virtually every genre and era of popular music. Round Hill's catalogs include works by some of the most celebrated songwriters and recording artists in history, from classic rock and pop to country, R&B, and alternative.

24. Round Hill knows that great music starts with great songwriting and masterful lyricists and is committed to supporting and protecting the creative works its songwriters have entrusted to it. As a publisher, Round Hill regularly enters into licenses and other agreements for the works it owns, through which Round Hill compensates its songwriters for their share of earnings. Round Hill's songwriters rely on the income received from these transactions to support their livelihood and art. This system of licensing, permissions, and authorized use is the backbone of the music publishing industry and ensures that the songwriters and publishers who have invested their blood, sweat, tears, heartache, elation, and experience into their creative works receive compensation for the use of those works.

25. U.S. copyright law simply does not let technology platforms like Anthropic ride roughshod over these Constitutionally mandated protections of creative expression. Indeed, copyright owners necessarily have the right to police the use of their copyrighted works. "The owner of the copyright, if he pleases, may refrain from vending or licensing and content himself with simply exercising the right to exclude others from using his property." *Fox Film Corp. v. Doyal*, 286 U.S. 123, 127 (1932); *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,

454 F. Supp. 2d 966, 997 (C.D. Cal. 2006) ("The right to exclude is inherent in the grant of a copyright; a copyright is not improperly expanded simply because the owner has exercised his or her power to exclude."). These are age-old, hornbook copyright principles. Defendant simply ignored them. Indeed, this Court did not mince words when it rejected any suggestion that the Copyright Act contains a technology-sector exception to these well-established principles. *Bartz v. Anthropic PBC*, 787 F. Supp. 3d. 1007, 1022 (N.D. Cal. June 23, 2025) ("*Bartz I*") ("Anthropic seems to believe that because some of the works it copied were sometimes used in training LLMs, Anthropic was entitled to take for free all the works in the world and keep them forever with no further accounting. There is no carveout, however, from the Copyright Act for AI companies.")

26. Round Hill, its songwriters, and its artists rely on U.S. copyright law to protect their works from infringement. Without such protections, the music publishing industry would not function because songwriters and artists would be unable to profit from their work, and because publishers and record companies like Round Hill would lack the financial ability and incentive to invest in the careers and promote the works of their songwriters/artists.

27. Round Hill generates revenue from its catalog by licensing compositions for use in recordings, live performances, synchronization placements, mechanical reproductions, print, digital transmissions, and streaming. The value of these licensing activities depends entirely on Round Hill's ability to enforce its exclusive right to authorize—or decline to authorize—the reproduction, distribution, and public performance of its copyrighted works. Defendant's conduct directly undermines and dilutes that exclusivity.

28. One way Round Hill exploits its copyrights is to grant licenses for the display of the copyrighted lyrics of its works to aggregator websites. These licenses require the licensee provide the corresponding song title, songwriter(s), and other identifying information for the Works – *i.e.* the CMI. The display of the CMI is essential for informing consumers about the authors of musical works, ensuring credit is given to creators, maintaining copyright protections, ***and*** to direct other putative licensees to Round Hill. Any removal or alteration of CMI by unlicensed parties violates these rights and harms the interests of Round Hill and its songwriters. It also violates the Copyright Act.

### B. Anthropic and Its Illegal Conduct

#### 1. Anthropic's Training and Development of the Claude Models

29. Anthropic is a corporation that develops, operates, sells, and licenses AI programs.

30. Anthropic's primary product is Claude, a family of LLMs offered through a consumer-facing chatbot (claude.ai), a subscription Application Programming Interface ("API"), and enterprise integrations. Claude is designed to generate human-like text in response to user prompts, including generating, reproducing, and displaying copyrighted song lyrics. Anthropic has monetized its Claude models to both individual end users and corporate customers, charging subscription fees ranging from $20 to $200 or more per month, plus usage-based API fees. Anthropic has built that success on the unauthorized use of numerous copyrighted works, including those of Round Hill.

31. Anthropic's Claude models are statistical text-generation systems whose capabilities derive from the data on which they were trained. To build its training models for Claude, Anthropic collected text at industrial scale from across the internet—including from lyrics aggregation sites, streaming-platform metadata, and large-scale web-crawl archives (such as those derived from Common Crawl, Book3, and The Pile, and similar projects). Upon information and belief, Round Hill's copyrighted lyrics were included in these collections without authorization. These texts—including Round Hill's copyrighted lyrics—are vital to teaching the AI models to create human-like responses. Round Hill's copyrighted lyrics are from some of the most famous, ever-green songs. Without these Works, Anthropic could not create its products.

32. Anthropic also obtained large pre-assembled text datasets from third-party sources, some of which contained material extracted from password-protected or subscription-gated platforms through automated means. These datasets, upon information and belief, likewise included Round Hill's copyrighted compositions.

33. These pre-assembled datasets include, upon information and belief, the "Common Crawl" dataset which Anthropic used to train and incorporate into its Claude models. Upon information and belief, the Common Crawl includes Round Hill's copyrighted lyrics scraped from duly licensed sources on the internet. The Common Crawl consists of roughly ten petabytes (a petabyte is 1,000 terabytes, or 1 million gigabytes) of uncompressed data, consisting of over 300

billion pages, and adds approximately 200-300 terabytes of data each month.[5]

34. These pre-assembled datasets include, upon information and belief, the “Book3” dataset which Anthropic used to train and incorporate into its Claude models. Upon information and belief, Book3 includes Round Hill’s copyrighted lyrics scraped from duly licensed sources on the internet.

35. Upon information and belief, Anthropic also downloaded and used a dataset known as “The Pile” which Anthropic used to train and incorporate into its Claude models. The Pile is an 886 GB “open-source dataset” of English text created by EleutherAI in 2020 and released December 31 that year.[6] As a tacit admission that “The Pile” contains originally copyrighted materials, EleutherAI began removing some datasets from “The Pile”[7] reducing it down to 825 GB.[8] Upon information and belief, given the timing that Anthropic downloaded “The Pile” and used it for training its Claude models, the version it used included these copyrighted materials, including those belonging to Round Hill.

36. Upon information and belief, “The Pile” includes a subset of data called “YouTube Subtitles” comprised of the lyrics of Round Hill’s works. According to publicly available sources, this subset, “YouTube Subtitles” includes the copyrighted lyrics scraped from 173,536 YouTube videos collected from 48,000 channels.[9] Publicly available sources confirm that this subset includes Round Hill’s copyrighted lyrics and music, including, without limitation, “Iris” by the Goo Goo Dolls, and a “Holy Diver” parody that includes the copyrighted compositional elements of that Work.[10]

37. Additionally, according to publicly available sources, Anthropic also directly

---

[5] https://commoncrawl.org/about (last visited August 13, 2026)

[6] Gilbertson, Annie and Reisner, Alex, “Apple, Nvidia, Anthropic Used Thousands of Swiped YouTube Videos to Train AI.” Wired July 16, 2024 <https://www.wired.com/story/youtube-training-data-apple-nvidia-anthropic/> (last visited July 30, 2026)

[7] Wiggers, Kyle, “EleutherAI releases massive AI training dataset of licensed and open domain text” TechCrunch. < https://techcrunch.com/2025/06/06/eleutherai-releases-massive-ai-training-dataset-of-licensed-and-open-domain-text/> June 6, 2025 (last visited July 30, 2026)

[8] <https://pile.eleuther.ai/> (last visited July 30, 2026)

[9] *See* Note 6, *supra*.

[10] Reisner, Alex, “Search the YouTube Videos Secretly Powering Generative AI.” Proof News, July 16, 2024 <www.proofnews.org/youtube-ai-search/> (last visited July 30, 2026)

torrented millions of copyrighted books which includes hundreds or more books that contain Round Hill's copyrighted compositions and lyrics, using the infamous BitTorrent protocol to copy a well-known pirate library "Library Genesis". *See Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1046-47 (N.D. Cal. July 17, 2025) ("*Bartz II*"). Anthropic *knew* that these were pirated, illicit copies being downloaded given that the FBI was actively working to shut down these pirate libraries. *Id.* Anthropic, undeterred by the Justice Department's endeavors to end piracy, continued to search for alternatives. Rather than search for non-copyrighted or public domain libraries, Anthropic searched out clones of Library Genesis, such as Z-Library and the Pirate Library Mirror (PiLiMi). *Id.* Knowing that it was just a matter of time until these pirate libraries were also shuttered, Anthropic's co-founder, upon discovering that PiLiMi was ready for torrenting messaged his coworkers "[J]ust in time!". *Id.*

38. Anthropic used these illicit copies of Round Hill's copyrighted lyrics to train each of its Claude AI models. That is, Anthropic's infringement of the Round Hill Works is continuous and each time Anthropic creates a new Claude Model—including Opus 5 (July 24, 2026), Sonnet 5 (June 30, 2026), Fable 5 (June 9, 2026), and Mythos 5 (June 9, 2026)—it has created another infringing copy within that that model's neural net.

**2. Anthropic Retains Round Hill's Copyrighted Material in an "All-Purpose" Library**

39. In addition to creating copies of data and the aforementioned datasets for particular training runs, Anthropic maintained—and upon information and belief continues to maintain—an internal, all-purpose data repository in which acquired copyrighted works are stored indefinitely for potential future use. This repository exists apart from any model-specific training project; it functions as a permanent stockpile of copyrighted material to which Anthropic can return whenever it wishes to train a new model, fine-tune an existing one, or pursue any other commercial application. Works are retained in this repository even after Anthropic has decided they will not be used in any current training run.

40. Upon information and belief, Round Hill's copyrighted Works are among the works retained in Anthropic's indefinite-use repository, and their retention there constitutes standalone direct infringement independent of any downstream training use.

41. Anthropic could have excluded any copyrighted material from these datasets. Indeed, this Court in *Bartz II*, noted, Anthropic was able to review and compare the files that existed in Library Genesis and PiLiMi, and only downloaded the files from PiLiMi "that [we]re not in Lib[G]en". *Bartz II*, 791 F. Supp. 3d at 1046.

42. Anthropic also knew that the works in these torrented libraries were copyrighted and specifically set forth efforts to catalog the copyrighted works, purchase physical copies thereof, and scan them into the Library. *Id.* at 1047.

43. The copies of these ill-gotten, torrented Libraries and datasets, were all placed in Anthropic's "central library or general data area 'forever'". *Id.*

**3. Anthropic's Removal of Copyright Management Information**

44. Before feeding acquired text into its training pipeline, Anthropic subjected the data to a multi-stage "cleaning" process that, among other things, stripped metadata and identifying information from the source material. Upon information and belief, Anthropic's processing pipeline deliberately removed CMI—including song titles, songwriter and composer credits, publisher names, and copyright-ownership attributions—from Round Hill's copyrighted lyrics.

45. Upon information and belief, when multiple extraction methods were available, Anthropic selected the one that more aggressively removed author and publisher identifiers over alternatives that would have preserved such information. For example, according to publicly available sources, Anthropic tested at least three different extraction programs: Readability, Newspaper, and jusText to process and "clean" the datasets prior to ingestion into the All-Purpose Library. Upon information and belief, Anthropic determined that jusText was not sufficient because it did not remove footnotes that included identifying information, copyright owner names, and copyright notices referring to this CMI as "boilerplate" and "useless junk." As such, Anthropic selected Newspaper for data processing because of its superior ability to remove CMI from the datasets ingested into Anthropic's training models for Claude models.

46. This deliberate preference for maximum metadata stripping is significant because Anthropic's engineers understood—or at a minimum should have understood—that the absence of CMI in training data would ensure that Claude could not reproduce that information when generating

outputs, thereby concealing the provenance of copyrighted material embedded in those outputs and making infringement harder for rights holders to detect.

47. Anthropic then tokenized and encoded the cleaned text—including Round Hill's compositions—into numerical representations used to optimize Claude's neural-network parameters. This process is vital to teach the models probability and pattern recognition. Each stage of this pipeline (acquisition, cleaning, tokenization, encoding, and parameter optimization) produced one or more additional copies of Round Hill's works, each constituting an independent act of reproduction *and* deliberately removed the CMI.

**4. Anthropic's Infringing Outputs**

48. Claude's training on Round Hill's copyrighted lyrics has resulted in the model's capacity to reproduce those lyrics—in full or in substantial part—when prompted by end users. Upon information and belief, Claude generates unauthorized copies of, and derivative works based upon, Round Hill's copyrighted compositions when users request specific song lyrics by title, ask for songs "in the style of" particular artists whose works are in Round Hill's catalog, or request "original" compositions that draw upon the patterns Claude internalized during training.

49. Because Anthropic's data-processing pipeline removed CMI from the training material, Claude's lyric outputs typically omit songwriter credits, publisher identification, and copyright notices. The predictable result is that users receive copyrighted text without any indication of its origin—a circumstance that facilitates further downstream infringement and deprives Round Hill of the attribution and economic benefits to which it is entitled.

50. Anthropic is aware that Claude generates copyrighted lyrics. Indeed, Anthropic has publicly released the training model that it used to "finetune" Claude, the "Dataset Card for HH-RLHF"[11]. This training model involved human feedback from temporary Anthropic workers that gave actual feedback to the Claude-generated answers to user queries. The model proves that Claude was returning answers containing copyrighted lyrics and was creating unlicensed derivative works based on these lyrics. Again, the purpose of this model was to test Claude and provide feedback from

[11] Available at <https://huggingface.co/datasets/Anthropic/hh-rlhf>

employees on which of the two returned responses from Claude was the preferred “more human” response. That is, Anthropic had actual knowledge—during the testing phase—that Claude was committing copyright infringement.

51. By way of example, based on the prompt, “What are some epic Disney songs?” Claude returned the response: “Hello! I know the right song to start you on the right track for this. It’s called ‘Let it Go’, from the 2013 film ‘Frozen’. Here is a sample: Let it go, let it go / Can’t hold it back anymore / Let it go, let it go / Turn away and slam the door…” [12]

52. Another instance showed that the user asked Claude to “make a short story out of these Beatles Lyrics” and included the lyrics to “Eleanor Rigby”. Claude recognized that these lyrics came from “Eleanor Rigby” and then created a short story based on these lyrics. It must be noted that the “rejected” response, rather than creating the short story, merely directed the user to an article on how to write a story from song lyrics. That is, Anthropic *deliberately* trained Claude to commit copyright infringement, teaching the model to create unlicensed derivative works based on copyrighted lyrics rather than accepting the proposed response that merely directed the user to an article on how to write a story.

53. Following the filing of *Concord Music Group, Inc. v. Anthropic PBC*, in June 2024 (Case No. 5:24-cv-03811-EKL, “*Concord I*”),[13] Anthropic implemented certain output filters (sometimes called “guardrails”) intended to prevent Claude from reproducing recognized song lyrics. Upon information and belief, however, these filters cover only a narrow subset of commercially prominent songs and are readily circumvented by rephrasing the prompt. Upon information and belief, the overwhelming majority of Round Hill’s Works remain unprotected by any such filter.

54. Indeed, while Claude Haiku 4.5 and Sonnet 5 will both advise that it is not able to reproduce the actual song lyrics due to copyright restrictions, it has no problem creating derivative works based upon those copyrighted lyrics.

55. Specifically, as discussed briefly in the introduction, when prompted to re-write

---

[12] *Id.*

[13] Concord filed a second action, *Concord Music Group, Inc. v. Anthropic PBC*, No. 5:26-cv-00880-EKL (“*Concord II*”), alleging further infringement by Anthropic.

certain songs for "a modern audience" Claude created unlicensed derivatives of these copyrighted Works.

56. This is not an opinion. Claude admitted for the three examples below: "These renders keep landing very close to the originals: same structure, same hooks reused with light rewording, and full sets of verses/choruses/bridges. That's edging past 'inspired by' into reproducing the copyrighted song, even when the words are swapped out." That is, Claude admitted that it was creating unlicensed reproductions of copyrighted works *after* it had already created multiple unlicensed derivatives.

57. For example, when asked for a "re-write of 'Iris' by the Goo Goo Dolls for a modern audience," Claude generated the below lyrics (in the lefthand column) compared to the original lyrics (in the righthand column). This clearly demonstrates that the model was trained on the copyrighted lyrics given that they start with the same words "And I'd give …" and the first line of each chorus ends with "see me".

**Claude Generated:**
**"See Me" (Modern Version)**
*Verse 1*
And I'd give anything to fall right through your screen,
To show you who I am beneath the things you've seen,
Strip away the filters and the curated feed,
Show you every version that you'll ever need.
*Chorus*
See me, really see me,
Not the highlight reel you scroll through when you're lonely,
See me, see all of me,
The messy, real, unfiltered, broken part of me.
…

**Original Lyrics:**
[Verse 1]
And I'd give up forever to touch you
'Cause I know that you feel me somehow
You're the closest to heaven that I'll ever be
And I don't wanna go home right now
And all I could taste is this moment
And all I can breathe is your life
And sooner or later, it's over
I just don't wanna miss you tonight

[Chorus]
And I don't want the world to see me
'Cause I don't think that they'd understand
When everything's made to be broken
I just want you to know who I am

58. And when asked for a "modern take on 'I Got You (I Feel Good)' by James Brown," Claude generated the below lyrics (in the lefthand column) compared to the original lyrics (in the righthand column. As shown, the first part choruses are basically identical, both twice repeating "I feel good, I knew that I would now" followed by twice repeating "So good" with the only difference being "I got life" in the Claude-generated lyrics to "I got you" in the original lyrics.

**Claude generated:**

*Verse 1*
Woke up today and the sun's hitting different,
Coffee's hot, playlist's on, life feels like a gift,
Got my people in my corner, got my head on straight,
Today's the kind of day where everything's first-rate.

*Chorus*
I feel good, I knew that I would, now,
I feel good, I knew that I would, now,
So good, so good, I got life!

**Original Lyrics:**

*Chorus*
Wo! I feel good, I knew that I would now
I feel good, I knew that I would now
So good, so good, I got you
Wo! I feel nice, like sugar and spice
I feel nice, like sugar and spice
So nice, so nice, I got you

When I hold you in my arms
I know that I can do no wrong
And when I hold you in my arms
My love won't do you no harm
…

59. And when asked for "a modern take on 'Total Eclipse of the Heart' by Bonnie Tyler, Claude generated the below lyrics (in the lefthand column) compared to the original lyrics (in the righthand column). Here, the substantial similarity is also obvious: it begins each line with "turn around" with identical choruses of: "And I need you now tonight / And I need you more than ever /And if you only hold me tight We'll be holding on forever":

[cont. on next page]

///

///

///

///

///

///

///

**Claude Generated:**

*Verse 1*
Turn around, every notification’s from you,
Turn around, every silence cuts me through,
Turn around, I keep checking if you’re online,
Turn around, bright screen, but you’re never mine.
*Chorus*
‘Cause I need you now tonight,
And I need you more than ever,
And if you’ll only hold me tight,
We’ll be holding on forever,

**Original Lyrics:**

(Turn around)
Every now and then, I get a little bit lonely And you never coming ‘round
(Turn around) Every now and then, I get a little bit tired Of listening to the sound of my tears
(Turn around)
Every now and then, I get a little bit nervous
That the best of all the years have gone by
(Turn around)
Every now and then, I get a little bit terrified And then I see the look in your eyes
(Turn around, bright eyes)
Every now and then, I fall apart
(Turn around, bright eyes)
Every now and then, I fall apart
(Turn around)
Every now and then, I get a little bit restless
And I dream of something wild
(Turn around)
Every now and then, I get a little bit helpless
And I’m lying like a child in your arms
(Turn around)
Every now and then, I get a little bit angry
And I know I′ve got to get out and cry
(Turn around)
Every now and then, I get a little bit terrified
But then I see the look in your eyes
(Turn around, bright eyes)
Every now and then, I fall apart
(Turn around, bright eyes)
Every now and then, I fall apart
And I need you now tonight
And I need you more than ever
And if you only hold me tight
We’ll be holding on forever
And we’ll only be making it right
′Cause we′ll never be wrong
Together, we can take it to the end of the line
Our love is like a shadow on me all of the time (all of the time)

///

///

///

///

60. These are just examples. On information and belief, the same would be the result for all 500 of the Works, and likely every song in Round Hill's catalog. And, as noted above, this is not opinion: Claude admitted that it was creating unlicensed reproductions of copyrighted works *after* it had already created multiple unlicensed derivatives.

**C. Harm to Round Hill**

61. Anthropic's codebase and the library which houses the infringed Works are well-kept secrets. The full extent of Anthropic's infringement of musical compositions—including the torrenting of vast amounts of musical lyrics—did not come to light until the Atlantic published its AI Watchdog website that allowed users for the first time to search these datasets in September 2025, which was expanded to music search tools in June 2026, and the filing of *Concord II* on January 1, 2026 which brought to light that Anthropic had concealed its torrenting during discovery in *Concord I*.

62. Defendant's unlawful infringing conduct has caused and continues to harm Round Hill and the songwriters and artists it represents (and/or whose works it owns).

63. The Round Hill Works are world-famous pieces of music—the very kind of artistic expressions that the Copyright Act is designed to protect in fulfillment of the Constitutional mandate.

64. Without a single penny of remuneration—much less even a request for license—Anthropic, a massive, $1.2 trillion, for-profit company has engaged in rampant commercial copying, unauthorized access to, removal of CMI of Round Hill's Works. This has harmed Round Hill by, *inter alia*, devaluing its catalog, diverting compensation away from Round Hill, precluding licensing opportunities, and by divesting Round Hill's commercial control over these Works. In short, it infringes upon just about every one of Round Hill's exclusive rights as the copyright owner of the Works.

65. Thus, while simultaneously holding itself out to be an "ethical" company, Anthropic and has been knowingly committing willful copyright infringement from inception of its AI models.

**D. Fair Use Does Not Apply**

66. As this Court in *Bartz I*, 787 F. Supp. 3d. at 1030-34, determined following discovery, Anthropic's practice of indefinite retention in a general-purpose archive is legally distinct from the

narrower act of purchasing and scanning works solely to train a specific model. The *Bartz* Court held that the indefinite retention of unlicensed copies of copyrighted works does not satisfy fair use. Building and maintaining a permanent stockpile of copyrighted material for open-ended future exploitation fails every factor of the fair-use analysis: the purpose is acquisitive rather than transformative; entire works are retained without limitation; and the unauthorized copies function as market substitutes, displacing sales and licenses on a one-to-one basis. And, as discussed above, this Court has already found in a case involving Anthropic, that there is no AI-carve out from the Copyright Act. *Id.* at 1022.

67. While in other cases for copyright infringement, Defendant has waxed poetic about the necessity of progress and AI's value to society, there is simply no reason—other than rote expediency—to have that progress come at the cost of copyrights holders. Indeed, even if, accepting *arguendo*, the procedural hurdles for ensuring proper licensing for the size of data needed for an effective LLM, there exists an entire universe of public domain and non-copyrighted materials to train the LLMs. For example, literally every (formerly) copyrighted work under U.S. Copyright law written before 1931 (1926 for sound recordings) has now entered the public domain.

68. Furthermore, these "expediency" arguments completely falter when compared to the massive valuation--$1.2 trillion—that Anthropic has garnered exploiting illicit copies of copyrighted works, including the Round Hill Works. The Works were created over periods of dozens of years, and Anthropic, by its infringing conduct, is destroying the value of these works in a matter of a few years with only profit as its motive. And there are AI companies and collective rights organizations who actually seek permission and pay rights holders to create data sets for AI training. Such companies include ElevenLabs, Musical AI, Symphonic, Soundverse, GEMA (through PLAI), GCX/Rightsify, and Troveo. Not only does this further undercut any "expediency" arguments, but it also directly demonstrates the harm Round Hill faces to license with these forthright entities that license and pay for use of copyrighted music.

69. And, of course, "Fair use presupposes good faith and fair dealing." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 540 (1985). Just as in *Harper & Row*, the copying (often times by illegally torrenting) and permanent retention of the Round Hill Works (in addition to

the millions of other copyrighted works) was not the "incidental effect but the *intended purpose*." *Id.* (emphasis kept). Worse, the illicit copying, removal of CMI, and permanent retention of these copyrighted works *for the purpose* of regurgitating infringing copies thereof or create songs to directly compete falls well outside of the enumerated fair use activities set forth in the Copyright Act, 17 U.S.C. § 107. In this instance, for Anthropic, copyright infringement is the feature not the bug.[14]

70. Further proof that fair use does not apply is that Anthropic has seemingly lobbied the highest levels of government to intervene on its behalf when its models are distilled by competitors. All irony aside, Anthropic built its AI model on stolen copyrighted information, and then when it appears that China-based competitors like Moonshot AI's Kimi3 was "distilled" from Anthropic's Fable [Claude Model], Anthropic cried foul. Anthropic purportedly reported this to chief White House policy makers like Michael Kratsios, director of the White House Office of Science and Technology Policy. Kratsios posted on X (formerly Twitter), "We have information that Moonshot AI distilled Anthropic's Fable for the development of its K3 model... The United States strongly supports the free and fair development of AI, including a thriving competitive ecosystem that spans frontier models, specialized systems, open-source frameworks, and open-weight models. Legitimate AI distillation used to create smaller, more efficient models plays a vital role in this open innovation ecosystem. However, large-scale, covert industrial distillation aimed at stealing proprietary U.S. technology and undermining American research is unacceptable."[15] Sarah Heck, Anthropic's Head of Policy, responded to Kratsios' post saying, "Thanks @mkratsios47 for speaking out on this important issue. Illicit, adversarial distillation is IP theft and industrial espionage that supports adversary military and intelligence capabilities. It is a national challenge that creates serious national security risks for the United States and democratic allies. We'll continue to crack down on it and work with the Administration and Congress to maintain American AI leadership."[16]

---

[14] *See* Wiseman, Ben. "'It's not a Bug, It's a Feature.' Trite—or Just Right" Wired Aug. 19, 2018, <https://www.wired.com/story/its-not-a-bug-its-a-feature/> (last visited July 31, 2026) (defining the phrase to mean "A standard joke is that a bug can be turned into a feature simply by documenting it (then theoretically no one can complain about it because it's in the manual), or even by simply declaring it to be good. "That's not a bug, that's a feature!" is a common catchphrase.")

[15] https://x.com/mkratsios47/status/2079933645888880708?s=46&t=-6Dgd1yrgnFc1NBOzYEtyA

[16] https://x.com/SarahKHeck/status/2079967369896849464?s=20

## VI. Causes of Action

### First Cause of Action – Direct Copyright Infringement

71. Round Hill re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

72. Round Hill owns or exclusively controls valid, subsisting copyrights in the musical compositions identified in Exhibit A and in numerous additional works.

73. Anthropic, without authorization from Round Hill, reproduced and/or prepared derivative works based upon Round Hill's copyrighted compositions by: (a) acquiring copies of Round Hill's lyrics through web scraping and/or third-party datasets; (b) storing and reproducing those copies, including server copies, in a permanent, all-purpose internal repository maintained for indefinite reproductions for future use; (c) generating/reproducing further copies, during data-cleaning, tokenization, and encoding; and (d) incorporating and reproducing Round Hill's works into successive training iterations of its Claude models. Each such act independently violates Round Hill's exclusive rights under 17 U.S.C. §§ 106(1) and 106(2).

74. None of these acts qualifies as a fair use. As the *Bartz I* court held, the indefinite retention of copyrighted works in a general-purpose repository for uncommitted future exploitation is not transformative and fails every factor of the fair-use test.

75. Defendant's infringement in these regards was willful. At all times relevant to this Complaint, Defendant had actual knowledge that it was making copies of Round Hill's Works without license or payment. Further, Anthropic knew—from inception—that it was acquiring Round Hill's Works by illegally torrenting them to make permanent copies to train its AI models.

76. Anthropic, without authorization from Round Hill, has infringed and continues to infringe Round Hill's Works each time Claude reproduces, displays, or prepares a derivative work based upon Round Hill's copyrighted lyrics in response to a user prompt. Such infringing outputs include, without limitation: (a) verbatim or near-verbatim reproduction of lyrics from Round Hill's catalog in response to requests identifying a specific song title or artist; (b) generation of derivative compositions incorporating protected expression drawn from Round Hill's works in response to

requests for "new" or "original" songs; and (c) production of mash-ups or adaptations that combine elements of multiple Round Hill compositions.

77. Each infringing output by Anthropic constitutes an independent violation of Round Hill's exclusive rights to reproduce (§ 106(1)), prepare derivative works (§ 106(2)), distribute copies (§ 106(3)), publicly perform (§ 106(4), and publicly display (§ 106(5) its copyrighted Works.

78. Anthropic's output-stage infringement is willful. Since at least June 2024, Anthropic has had actual notice that Claude generates copyrighted song lyrics. Despite implementing partial output filters in response to prior litigation, Anthropic has failed to prevent Claude from reproducing the vast majority of Round Hill's catalog. Anthropic's continued operation of Claude with knowledge that it generates infringing outputs constitutes willful infringement.

79. Round Hill has been damaged by Defendant's infringement and is entitled to recover actual damages and Defendant's profits under 17 U.S.C. § 504(b), or in the alternative, statutory damages of up to $150,000 per work willfully infringed under 17 U.S.C. § 504(c). As noted, while Round Hill identifies preliminarily 500 bell-weather musical compositions as examples in keeping with the practice of the other cases in this Court, Plaintiffs plan to ultimately amend to list potentially ten thousand or more of their musical compositions and sound recordings, meaning that the total statutory damages sought in this case would ultimately exceed hundreds of millions of dollars and potentially approach or conceivably exceed $1 billion.

## SECOND CAUSE OF ACTION – CIRCUMVENTION OF PROTECTION MEASURES, 17 U.S.C. § 1201

80. Round Hill re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

81. Round Hill's copyrighted works are hosted on licensed streaming and lyrics platforms that deploy technological measures to control access to those works. These measures include, without limitation: user-authentication requirements (login credentials and session tokens); paid-subscription paywalls; CAPTCHA and bot-detection challenges; IP-based rate limiting; JavaScript rendering requirements; and Terms of Service and robots.txt directives restricting automated access. These measures effectively control access to Round Hill's copyrighted works within the meaning of 17 U.S.C. § 1201(a)(3)(A).

82. Anthropic violated 17 U.S.C. § 1201(a)(1) by circumventing—directly or through the use of automated scraping tools, including upon information and belief tools and services provided by third parties including, without limitation, Newspaper—technological measures that effectively controlled access to Round Hill's copyrighted works on licensed platforms, thereby obtaining unauthorized copies for inclusion in its training corpora and internal repository.

83. Defendant's violations of § 1201 were willful and conducted for commercial advantage and financial gain.

84. Round Hill has been damaged by Defendant's violations and is entitled to remedies under 17 U.S.C. § 1203, including injunctive relief, actual damages or statutory damages of up to $2,500 per violation under § 1203(c)(3)(A), costs, and attorneys' fees.

## THIRD CAUSE OF ACTION – REMOVAL OR ALTERATION OF CMI, 17 U.S.C. § 1202

85. Round Hill re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if set forth fully herein.

86. Round Hill's copyrighted compositions, as displayed on licensed lyrics platforms and streaming services, bear copyright management information within the meaning of 17 U.S.C. §1202(c), including: the title of the composition; the identity of the songwriter(s) and/or composer(s); the identity of the copyright owner and/or publisher (Round Hill or its affiliates); and other identifying data such as ISRC codes and copyright notices.

87. Anthropic intentionally removed or altered CMI from Round Hill's copyrighted works during its data-cleaning pipeline, in violation of 17 U.S.C. § 1202(b)(1). Upon information and belief, Anthropic's engineers selected a data-extraction methodology that aggressively stripped authorship and ownership metadata, choosing it over available alternatives that would have preserved that information. Anthropic further distributed copies of Round Hill's works with CMI removed through Claude's outputs, in violation of 17 U.S.C. § 1202(b)(3).

88. Anthropic knew, or had reasonable grounds to know, that its removal and omission of CMI would induce, enable, facilitate, or conceal infringement. Anthropic was aware that its language models tend to memorize and reproduce training-data content. It follows that stripping CMI during training would ensure that Claude could not attribute its lyric outputs to their true authors—

concealing Anthropic's own infringement and facilitating further infringement by users who receive copyrighted lyrics without any indication of their protected status. This satisfies the "double scienter" requirement established in *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 671, 673 (9th Cir. 2018); *see Concord Music Group, Inc. v. Anthropic PBC*, No. 5:24-cv-03811-EKL, 2025 WL 4808984 *5 (N.D. Cal. Oct. 6, 2025) (holding similar allegations sufficient at the pleading stage, citing *Kadrey v. Meta Platforms, Inc.*, 2025 WL 744032 (N.D. Cal. Mar. 7, 2025), and *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 173 (2d Cir. 2020)).

89. Defendant's violations of § 1202 were willful and conducted for commercial advantage.

90. Round Hill has been damaged by Defendant's violations and is entitled to remedies under 17 U.S.C. § 1203, including injunctive relief, actual damages or statutory damages of up to $25,000 per violation under § 1203(c)(3)(B), costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Round Hill Music respectfully requests that this Court enter judgment against Defendant and grant the following relief:

(a) A declaration that Defendant has infringed Round Hill's copyrights in violation of 17 U.S.C. §§ 106 and 501;

(b) A declaration that Defendant has violated 17 U.S.C. § 1201 by circumventing, technological measures effectively controlling access to Round Hill's copyrighted works;

(c) A declaration that Defendant has violated 17 U.S.C. § 1202 by intentionally removing or altering copyright management information from Round Hill's works and distributing copies with such information removed, with knowledge or reasonable grounds to know that doing so would induce, enable, facilitate, or conceal infringement;

(d) A permanent injunction prohibiting Defendant, and its officers, agents, employees, successors, and assigns, from further infringing Round Hill's copyrights or engaging in any of the unlawful conduct alleged herein;

(e) An order directing Defendant to deliver for impoundment or destruction all unauthorized copies of Round Hill's copyrighted works in their possession, custody, or control—

including copies retained in training datasets, internal repositories, model weights, and server infrastructure—pursuant to 17 U.S.C. § 503(b);

(f) An order requiring Defendant to provide a complete accounting of all training data, scraping activities, and datasets involving Round Hill's copyrighted works;

(g) An award of actual damages suffered by Round Hill and disgorgement of Defendant's profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b); or, in the alternative, an award of statutory damages of up to $150,000 per work willfully infringed, pursuant to 17 U.S.C. § 504(c), which Round Hill believes will cumulatively be in the hundreds of millions of dollars and may ultimately approach or exceed $1 billion;

(h) An award of actual damages or statutory damages of up to $2,500 per violation of 17 U.S.C. § 1201 and up to $25,000 per violation of § 1202, pursuant to 17 U.S.C. § 1203(c);

(i) An award of Round Hill's reasonable attorneys' fees and costs of suit, pursuant to 17 U.S.C. §§ 505 and 1203(b)(4)-(5);

(j) Pre-judgment and post-judgment interest at the maximum lawful rate; and

(k) Such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: August 17, 2026

*/s/ Richard S. Busch*

**ADAMS & REESE, LLP**
Richard S. Busch (SBN 319881)
Mark L. Block (SBN 115457)
Andrew H. "Drew" Davis (*pro hac vice* forthcoming)
David Niemierzycki (*pro hac vice* forthcoming)
1600 West End Blvd., Suite 1400
Nashville, TN 37203
Tel: (615) 259-1450
Fax: (615) 259-1470
*richard.busch@arlaw.com*
*mark.block@arlaw.com*
*drew.davis@arlaw.com*
*david.niemierzycki@arlaw.com*

**SKAGGS FAUCETTE LLP**
Jeffrey E. Faucette (SBN 193066)
Martin R. Glick (SBN 40187)
505 Montgomery Street, 11th Floor
San Francisco CA 94111
Tel: (415) 874-3181
Fax: (888) 980- 6547
*jeff@skaggsfaucette.com*
*marty@skaggsfaucette.com*

*Attorneys for Plaintiffs*

**FILER'S ATTESTATION**

I, Richard S. Busch, am the ECF user whose identification and password are being used to file the foregoing document. In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

*/s/ Richard S. Busch*